# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TAWANA UNDERWOOD,

    Plaintiff,

v.                                                           Case No. 08-CV-11024-DT

RIVERVIEW OF ANN ARBOR AND GAIL
CALIGUIRI,

    Defendants.

                                                   /

## OPINION AND ORDER DENYING "DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA RETALIATION CLAIM"

Pending before the court is "Defendants' Motion for Partial Summary Judgment as to Plaintiff's FMLA Retaliation Claim." This motion has been fully briefed and the court concludes that a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendants' motion.

## I. BACKGROUND

Plaintiff began working as a Certified Nurses' Assistant at Defendant Riverview of Ann Arbor ("Riverview") on December 6, 2006 and worked at Riverview for approximately the next one year. (Compl. at 2.) Plaintiff was terminated by Riverview Director of Nursing Gail Caliguiri on January 21, 2008. *Id.*

Plaintiff alleges she was not paid for some hours actually worked while employed by Riverview, including hours she claims were deleted from the company time clock. (Compl. at 3.) Plaintiff further alleges she discussed the time discrepancies with her supervisor, eventually filing a complaint with the Michigan Department of Law and

Economic Growth, Wage & Hour Division, to recover 63.25 regular hours and 47.84 paid time off hours she argues were improperly excluded from her compensation in 2007. (Compl. at 3, ¶¶ 11-13; Pl.'s Resp., Ex. F.) Plaintiff's son was seriously injured in a robbery on January 2, 2008. (Compl. at 3, ¶ 14.) Plaintiff claims she spoke to her supervisor at Riverview about taking a leave of absence to care for her son on that same day, (*Id.*, ¶ 15), which Riverview denies. (Def.'s Mot. at 3.) Plaintiff did not report for work after January 2, 2008 and was terminated on January 21, 2008. (Compl. at 2.)

Count I of the complaint, not before the court here, alleges Plaintiff's termination was the result of reporting time concerns to her Riverview supervisor and the state agency. (Compl. at 4-5, ¶¶ 20-24.) Count II of the complaint, the target of the current motion, regards Plaintiff's status under the Family and Medical Leave Act ("FMLA") and alleged negative employment actions Defendants took while Plaintiff was on leave. Plaintiff claims she was granted a leave of absence under the FMLA, and was therefore improperly terminated in retaliation for exercising her FMLA rights. (Compl. at 5.) Defendants assert that Plaintiff was never eligible under the FMLA for a leave of absence, and thus her claim for retaliation under the Act must fail as a matter of law. (Def.'s Mot. at 1, ¶¶ 2-5.)

## II. STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*,

87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). If the court considers matters outside the pleadings, however, the motion is properly treated "as one for summary judgement and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12; *Abbott v. Mich.*, 474 F.3d 324, 331 n.8 (6th Cir. 2007).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

## III. DISCUSSION

### A. Statutory FMLA Coverage

The FMLA is designed to help balance an employer's need for a stable workforce with its employees' need to provide health care for family members. 29 U.S.C. § 2601(b). Among many other entitlements, the FMLA allows a parent to take leave to care for a child if such child has a serious health condition. 29 U.S.C. § 2612(a)(1)©. To be eligible for FMLA coverage, an employee must "have been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). If an employee is eligible, an employer cannot interfere with or discharge her for choosing to exercise her rights under the FMLA. 29 U.S.C. § 2615(a).

In analyzing an employee's FMLA claim, the first inquiry is whether the employee was eligible for FMLA leave. *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008); *Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 905 (6th Cir. 2004). Defendants start from this point as well, focusing on whether Plaintiff worked the requisite 1,250 hours in the previous 12 months, as required by the statute for FMLA eligibility. (Def.'s Mot. at 3.) Defendants use Plaintiff's "Employee Activity Report" from December 5, 2006 to December 30, 2007 to initially conclude that Plaintiff only worked 973.75 hours from December 6, 2006 to December 27, 2007. (*Id.* at 3.) Defendants later provided a more detailed accounting of Plaintiff's hours, with the assistance of the Payroll Director under contract to provide management services to Riverview. (Def.'s Reply at 2, Ex. B.) This later accounting, adjusting for time which Defendants assert was mismarked on Plaintiff's activity report, concludes that Plaintiff worked 994.25

hours from December 6, 2006 to December 27, 2007.  (*Id.*, Ex. B.)  In either case, Defendants' accounting of Plaintiff's hours falls well below the threshold requirement of 1,250 hours for FMLA eligibility.

Plaintiff counters Defendants' time accounting in two ways.  First, Plaintiff argues that the time reports used in Defendants' accounting contain a clear omission of any hours from March 17, 2007 until June 23, 2007.  (Pl.'s Resp. at 6.)  Plaintiff provides evidence that she was employed by Riverview during this time period.  (Pl.'s Resp., Ex. K.)  There is a difference, though, between "being employed" and "working hours."  Plaintiff provides a variety of pay stubs which reflect her hours worked during different time periods, but none of the pay stubs show any hours worked between March 17, 2007 and June 23, 2007.  (*See* Pl.'s Resp., Exs. B-D.)  Further, Plaintiff filed a complaint for missing hours with the Michigan Department of Labor and Economic Growth on December 21, 2007.  (Pl.'s Resp., Ex. F.)  The complaint details hours allegedly missing from July 2007 until December 2007, but does not mention any hours missing between March 17, 2007 and June 23, 2007.  (*Id.*)  Finally, Plaintiff included a number of "Time Correction Forms" and "Payroll Correction Slips" which detail her requests for adjustments to the time reported by Riverview's official time clock.  (*Id.* at 7, Ex. L.)  Again though, none of these adjustments demonstrate Plaintiff worked any hours from March 17, 2007 until June 23, 2007.  (*Id.*, Ex. L.)  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) (internal citations omitted).  As such, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.,* and must at least

5

offer some proof beyond merely asserting a fact as true.  *Id.*; *Murray-Ruhl v. Passinault*, 246 F.App'x 338, 349 n.2 (6th Cir. 2007).  Without something more than Plaintiff's own statement showing some hours worked between March 17, 2007 and June 23, 2007, the court cannot conclude the lack of reported hours for Plaintiff during that time must "show[] that the Employee Activity Report does not accurately reflect all the hours Plaintiff worked."  (Pl.'s Resp. at 7.)

Beyond the attack on a specific time period, Plaintiff also defends against the motion by asserting Riverview's time accounting methods were inaccurate as a whole, and thus any calculation of Plaintiff's hours cannot be trusted.  (Pl.'s Resp. at 6-7.)  As Plaintiff notes, there does appear to be a discrepancy between the hours reported in the "Employee Activity Report" and the hours Defendant included in its Supplement Brief.  (Pl.'s Resp. at 7.)  As discussed above, Defendants explain this discrepancy as the result of hours being miscatergorized in different time reports.  (Def.'s Reply, Ex. B.)

More importantly though, Plaintiff does no more than claim her hour records are inaccurate, a showing  insufficient to establish a genuine issue for trial.  *Staunch*, 511 F.3d at 630.  Even if Plaintiff can establish that Defendant Riverview did not maintain a record of the actual hours, or the records kept were not entirely accurate, Plaintiff still must present evidence showing the specific hours she worked on specific days.  Here, Plaintiff attests there were "several occasions . . . I would stay after my scheduled shift . . . and these hours would not be documented," (Pl.'s Resp., Ex. A), and on "[a]t least forty (40) times throughout the time that I worked for Riverview of Ann Arbor, I stayed for additional hours that were not documented."  (*Id.*)  But even if Plaintiff is to be believed that there were numerous occasions where her time was not documented, she

6

must, at the very least, provide some specific dates and hours on those dates where the time tracking mistakes occurred. Without that kind of specificity, the fact-finder cannot determine if the allegedly missing hours would push Plaintiff above the statutorily required minimum hours for FMLA coverage. The type of "undated, generalized list" before the court here and used to supplement or alter the defendants' own records "does not set forth specific facts showing a genuine issue for trial." *Staunch*, 511 F.3d at 630.

Plaintiff does provide the court with some specific hour data, in the form of the complaint filed with the Michigan Department of Labor and Economic Growth on December 21, 2007. (Pl.'s Resp., Ex. F.) But this report, which Plaintiff certified "to the best of [her] knowledge and belief . . . is a true statement of wages or fringe benefits due," as of December 21, 2007, (*id.*), would only include 63.26 regular hours and 47.84 paid time-off hours which she claimed were missing. Even assuming a correct calculation, these additional hours would not be enough (under any of the current cumulative hour reports in the record) to elevate Plaintiff above the 1,250 hour threshold for FMLA eligibility. 29 U.S.C. § 2611(2)(A). As such, the court finds no reasonable jury could find by a preponderance of the evidence that Plaintiff worked over 1,250 hours in the previous 12 months of her employment at Defendant Riverview, and therefore Plaintiff could not be statutorily eligible for FMLA coverage at the time of her January 2, 2008 leave.

### B. FMLA Coverage by Equitable Estoppel

If an employee has not worked the requisite hours for statutory FMLA eligibility, equitable principles may still provide coverage. Under the doctrine of equitable

7

estoppel, an employer "who has initially provided notice of eligibility for leave [and] later seeks to challenge that eligibility" may be estopped from such a challenge under equitable principles. *See Mutchler v. Dunlap Memorial Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007) (quoting *Woodford v. Cmty. Action of Greene County, Inc.*, 268 F.3d 51, 57 (2nd Cir. 2001); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir. 2005); *Wilkerson v. Autozone, Inc.*, 152 F. App'x 444, 450 (6th Cir. 2005) (unpublished). If an employer "makes a definite misrepresentation of fact to another person having reason to believe the other will rely upon it and the other does so to his or her detriment," the employer may face FMLA liability after taking an adverse employment action against the employee. *Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 909 (E.D. Mich. 2007) (citing *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)) (internal quotations omitted). In *Kesler*, the court found equitable estoppel, in the FMLA context, to exist where the plaintiff asserted that her employer asked her to complete FMLA paperwork, and the plaintiff relied on the request in making her leave decision. 482 F. Supp. 2d at 909. The plaintiff's assertion was enough to create a genuine issue of material fact as to whether the plaintiff was an eligible employee under FMLA. *Id.* Because the defendant did not offer contrary evidence of the request, *id.* n.4, the *Kesler* court then assumed the plaintiff was therefore eligible under an equitable estoppel theory. *Id. at 909.*

A similar situation exists in the current case. Plaintiff alleges that her choice to take leave on January 2, 2008 was motivated by a conversation she had with her supervisor on that same day. (Compl. at 3, ¶¶ 15-16; Pl.'s Resp. at 3-4.) She affirms

8

that her supervisor told her "that I could take the time off pursuant to the Family and Medical Leave [sic] and that he would mail me the FMLA paperwork," and she "relied upon [her supervisor's] statement to me that I could take the time off pursuant to the FMLA." (Pl.'s Resp., Ex. A ¶ 10, 13.) As a result, Plaintiff did take leave from her employment, effective January 2, 2008. Defendant disputes that Plaintiff received her supervisor's permission for FMLA leave. (Def.'s Mot. at 3.) The supervisor, Phil Troyer, contends that he "did not approve an FMLA leave for Plaintiff."[1] The disagreement as to whether Plaintiff received permission to take FMLA leave, regardless of whether she was a qualified employee, is material to the motion. If Plaintiff did receive verbal approval from her supervisor and relied on that approval in her decision to take FMLA leave, and was terminated as a result, she may be able to proceed under an equitable estoppel theory. *Kesler*, 482 F. Supp. 2d at 909. The court notes Plaintiff here is unlike *Kesler* in one key respect. In *Kesler,* the defendant did not contest that the plaintiff had been given permission for FMLA leave, 482 F. Supp. 2d at 909, and therefore the court assumed the plaintiff had proven she was an FMLA eligible employee. *Id.* In this case, Defendant does contest whether any approval was given. (Def.'s Mot. at 3.) The affirmation of Plaintiff's supervisor to the contrary therefore creates the type of genuine

---

[1] The court notes that Defendants' "Declaration of Phil Troyer" is neither notarized nor dated. While a notary is not necessary for compliance with federal law, the date of declaration is required. 28 U.S.C. § 1746. Nonetheless, the extrinsic evidence of the accompanying motion demonstrates the signature occurred sometime in 2008, which the court finds sufficiently precise to avoid invalidating the document. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002). Further, Plaintiff has made no argument that the undated declaration is too imprecise to support a charge of perjury. *Id. (*citing *E.E.O.C. v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988)).

issue of material fact making the motion for summary judgment inapposite. Thus, the court must deny Defendants' motion for partial summary judgement.

## IV. CONCLUSION

IT IS ORDERED that "Defendants' Motion for Partial Summary Judgment as to Plaintiff's FMLA Retaliation Claim" [Dkt. #40] is DENIED.

                                         s/Robert H. Cleland
                                         ROBERT H. CLELAND
                                         UNITED STATES DISTRICT JUDGE

Dated: September 22, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 22, 2008, by electronic and/or ordinary mail.

                                         s/Lisa G. Wagner
                                         Case Manager and Deputy Clerk
                                         (313) 234-5522