**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TAWANA UNDERWOOD,

    Plaintiff,

v.                                                                    Case No. 08-CV-11024-DT

RIVERVIEW OF ANN ARBOR AND GAIL
CALIGUIRI,

    Defendants.
                                                        /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH**

Pending before the court is Defendant River of Ann Arbor's[1] motion to quash Plaintiff's subpoenas to the Michigan Department of Community Health ("MDCH") and the Michigan Department of Labor and Economic Growth ("MDLEG").[2] In the alternative, Defendant seeks a protective order limiting discovery. For the reasons stated below, Defendant's motion to quash the subpoenas will be denied.

**I. STANDARD**

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery, however, does have "ultimate and necessary boundaries," *Oppenheimer*

---

[1] Defendant Gail Caliguiri was dismissed, by stipulated order, on November 17, 2008.

[2] Defendant seeks to quash the MDCH subpoena in its entirety and limit the scope of the MDLEG subpoena.

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), and the court may limit the extent of discovery in a variety of circumstances. Fed. R. Civ. P. 26(b)(2)(C), (c). The ability to limit discovery is within the sound discretion of the district court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).

## II. DISCUSSION

Plaintiff's complaint contains two counts. First, Plaintiff contends Defendant violated the Michigan Whistleblowers' Protection Act ("MWPA"), Mich. Comp. Laws §§ 15.361 - 15.369. (Pl.'s Compl. at 4.) Specifically, Plaintiff contends she complained to the MDLEG about alleged wage and labor law violations, in response to which protected activity Defendant fired her. (*Id.*) Plaintiff also claims she requested, and was granted, medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 - 2654, but was subsequently terminated in violation of the FMLA. (Pl.'s Compl. at 5.) Plaintiff's subpoenas now seek documents from both the MDCH and the MDLEG in support of these claims.

### A. Standing to Challenge Subpoenas

Defendant's motion is directed at third-party subpoenas and implicates the question of standing which, even if not addressed by the parties, requires the court to determine whether Defendant has alleged "such a personal stake in the outcome" of its motion "as to warrant . . . invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers . . . ." *Loren v. Blue Cross and Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). "Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised sua sponte." *Loren*, 505 F.3d at 607 (citing *Cent. States Se. and Sw. Areas*

*Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005)).

### 1. Standing to Quash

It is clear that, "as a general rule, a party has no standing to seek to quash a subpoena directed to a non-party." *United States v. Well*s, No. 06-10589, 2006 WL 3203905, *2 (E.D. Mich. Nov. 3, 2006); *Microsoft Corp. v. Tech. Enter., LLC*, No. 07-mc-210, 2008 WL 424613, *1 (S.D. Ind. Feb. 13, 2008); *Hadix v. Caruso*, No. 92-cv-110, 2006 WL 2865506, *1 (W.D. Mich. Oct. 3, 2006). But an exception exists where the party-movant can demonstrate a claim of privilege or personal right. *Mann v. Univ. of Cincinnati*, No. 95-3195, 1997 WL 280188, *4 (6th Cir. 1997) (per curiam)*; Microsoft*, 2008 WL 424613 at *1 (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)); *Schweinfurth v. Motorola, Inc.*, No. 05-cv-024, 2008 WL 4981380, *2 (N.D. Ohio Nov. 19, 2008). Finally, a party seeking to quash a subpoena bears a heavy burden of proof. *Wells*, 2006 WL 3203905 at *2. Defendant, in seeking to quash subpoenas directed at third-parties, makes no claim of privilege or personal right. As such, and in light of the heavy burden of proof, the court finds Defendant is without standing to quash these subpoenas.

### 2. Standing for Protective Order

In contrast to a motion to quash, a motion for a protective order is available to "*a party* or by the person from whom discovery is sought." Fed. R. Civ. P. 26(c) (emphasis added). The explicit mention of "a party" in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties. *See Fleet Bus. Credit Corp. v. Hill City Oil Co., Inc.*, No. 01-2417, 2002 WL 1483879, *2 (W.D. Tenn.

Jun. 26, 2002) ("Many district courts have acknowledged this aspect of the rule which allows a party to file a motion for protective order on behalf of a non-party"); *see also Schweinfurth,* 2008 WL 4981380 at *2 ("[C]ourts within the Sixth Circuit have interpreted [Rule 26(c)] to permit 'a party' . . . to seek a protective order [on a third-party's behalf]."); *White Mule Co. v. ATC Leasing Co. LLC*, No. 07-cv-00057, 2008 WL 2680273, *4 (N.D. Ohio Jun. 25, 2008). This court will, therefore, consider Defendant's motion to the extent it seeks a protective order under Federal Rule of Civil Procedure 26(c).

### B. Motion for Protective Order

The court may limit discovery through a protective order. Fed. R. Civ. P. 26(c). The typical purpose of such an order is to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.* These purposes may be extended to encompass the overall limit of Federal Rule of Civil Procedure 26 – information that is relevant to a claim or defense. *White Mule,* 2008 WL 2680273 at *4; *Mayes v. City of Oak Park*, No. 05-cv-74386, 2007 WL 187941 (E.D. Mich. Jan. 22, 2007).

To obtain a protective order, however, the movant must establish good cause. *White Mule*, 2008 WL 2680273 at *4; *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (per curiam). Good cause is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix*, 11 F.App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

### 1. Subpoena to the MDCH

4

Plaintiff's subpoena to the MDCH seeks "any and all documents pertaining to any complaint made against Riverview of Ann Arbor and/or Riverview Acquisition Co., LLC and/or Ciena Healthcare Management for the time period of December 2006 through February 2008."  (Def.'s Mot., Ex. A at 2.)  Defendant argues that Plaintiff only complained to the MDLEG, and thus a request seeking any complaints to MDCH is both overly-broad and "not likely to lead to the discovery of relevant information regarding Plaintiff's claim to the MDLEG."  (*Id.* at 7.)  Plaintiff responds that "there is a claim in this case by Plaintiff that she had also reported [Defendant] to the [MDCH]."  (Pl.'s Resp. at 2.)[3]  Defendant attempts to establish good cause for a protective order by insisting that the discovery would be "prejudicial to Defendant[] who had no prior notice and [was] not able to conduct discovery on this information."  (Def.'s Mot. at 3.)  Defendant provides no specific facts demonstrating a serious injury to support this conclusory statement though, and the court is unpersuaded that Defendant was somehow prevented from conducting this same discovery earlier in time.  In light of Defendant's burden to establish good cause for a protective order, the court will deny the motion as to Plaintiff's subpoena to the MDCH.  *Nix*, 11 F.App'x at 500.

### 2.  Subpoena to the MDLEG

Plaintiff's subpoena to the MDLEG seeks:

[A]ny and all documents pertaining to the complaint of [Plaintiff] against Riverview of Ann Arbor and/or Riverview Acquisition Co., LLC and/or Ciena Healthcare Management and any and all documents pertaining to any complaints made against Riverview of Ann Arbor and/or Riverview Acquisition Co., LLC

---

[3]  Plaintiff provides no citation to the record to substantiate this statement, and the court can find to reference to the MDCH in any of the parties' pleadings.

and/or Ciena Healthcare Mgmt, for the time period of December 2006 to February 2008.

(Def.'s Mot., Ex. B at 2.) Defendant "does not contest that Plaintiff's complaint to the [MDLEG] is potentially relevant," (Def.'s Reply at 1), but does seek a protective order to the extent that the subpoena to the MDLEG "seeks information pertaining to Ciena Healthcare Management . . . which is not a party to this action." (Def.'s Mot. at 2.) Plaintiff admits that Ciena Healthcare Management ("Ciena") is "technically a separate entity," but argues the company "had a high level of control over the workings and administration of [Defendant] and were [sic] especially involved in the financial decisions of [Defendant] including payroll processes." (Pl.'s Resp. at 2.) In support, Plaintiff points to the deposition testimony of two of Defendant's former employees, Gail Caligiuri and Phil Troyer. (*Id.* at 1.)

Though Plaintiff does not point the court to any specific portions of the depositions, the court did find the subject of Ciena's relationship to Defendant raised on several occasions. In her deposition, Caliguiri was asked, "[d]o you know what Ciena was to [Defendant]?" to which she replied, "Specifically? No." (*Id.*, Ex. A at p. 35.) Caliguiri expanded on her answer to add, "[i]t was my understanding that Ciena Corporation was the parent company for Riverview, and my understanding could be incorrect." (*Id.*) In Troyer's deposition, he was questioned regarding Ciena's access to Defendant's payroll records. (*Id.* Ex. B at p. 21.) Troyer was asked how many Ciena employees had access, to which he responded, "I don't know who all might have had access, but I can name three." Later in the deposition, Troyer was asked about an audit

6

Ciena performed on Defendant's records, at which time he admitted, "[Defendant] was managed by Ciena Health Care." (*Id.* at p. 36.)

It is Defendant's burden to demonstrate good cause in seeking a protective order through "specific facts" showing "clearly defined and serious injury" that would result from the discovery sought. *Nix*, 11 F.App'x at 500. To that end, Defendant points to Ciena's "interest in maintaining confidentiality between its communications and investigations that *may* have occurred relating to the MDLEG." (Def.'s Mot. at 3) (emphasis added.) But Defendant does not specifically identify any communications or investigations that *did* occur which it seeks to protect. The speculative and conclusory nature of Defendant's alleged potential injury counsels this court against granting the protective order as it relates to Plaintiff's subpoena to the MDLEG.

### III. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's "Motion to Quash Plaintiff's Subpoena to the Michigan Department of Community Health in its Entirety and to the

Michigan Department of Labor and Economic Growth as it Pertains to Ciena . . ." [Dkt. # 65] is DENIED.[4]

                                                                  s/Robert H. Cleland
                                                                  ROBERT H. CLELAND
                                                                 UNITED STATES DISTRICT JUDGE

Dated: December 15, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 15, 2008, by electronic and/or ordinary mail.

                                                                 s/Lisa G. Wagner
                                                                 Case Manager and Deputy Clerk
                                                                 (313) 234-5522

---

[4] Court-supervised discovery ended on November 22, 2008. (11/17/08 Order.) Plaintiff's subpoenas to the MDCH and the MDLEG required the requested records be delivered to Plaintiff on November 24, 2008. (Pl.'s Resp., Ex. A at 2; Ex. B at 2.) The court does not know whether either the MDCH or the MDLEG produced the records on Plaintiff's schedule, but as the subpoenas' deadlines fell after the close of discovery, the parties should not assume that the court would assist in enforcement. The court offers no view as to the ultimate admissibility of the information, either in substance or as that issue might relate to its delivery post-deadline and concomitant inability of Defendant to pursue additional information.